Calendar is Samuel Irvin v. Daniel Harris Good morning. Good morning, Your Honors. May it please the Court, my name is Brian Feldman. With me today at Council's table is my colleague, Greg Dickinson. We were appointed as pro bono counsel for this Court on behalf of Mr. Irvin, the appellant. Are you representing the intervenors as well? Yes, we are. Intervenors Miller, Lefriere, and Mazio. Yes, Your Honor. All four of our clients are disabled prisoners who are challenging the way in which the district court below terminated a decades-old consent decree. It was a consent decree granted on a class-wide basis, and it guaranteed the constitutional adequacy of medical care at the Greenhaven facility. At the point that the district court terminated the consent decree, it violated our clients' due process rights in two distinct ways. The first has to do with the settlement protections that were guaranteed by the due process clause and not followed below. This was not a settlement. It was a settlement, Your Honor. Tell me why this is a settlement. By the way, thank you for being pro bono counsel. Thank you for the opportunity. Chair of the pro bono panel. It's our pleasure. So let me start with the settlement issue, and really you've gone right to the crux of this argument. The parties don't dispute what the law is on Rule 23 in the due process clause, which protections apply, and that the absence of those protections constitute a due process violation. What we dispute is what happened below, and Your Honor's question is exactly the crux of this. Was it a settlement? And it was. The settlement appears at page 288 of the joint appendix and also 289 when it's so ordered two days later by the court. But it's ultimately called a termination of the consent decree as well as a settlement. That's correct, Your Honor. There are two main reasons why this is a settlement, and they're both flip sides of the same coin. The first is that this settlement, which is page one of the special appendix as well, is presented to the court as a deal, a horse trade between one side and the other. Plaintiff's counsel says we've agreed to withdraw our opposition to termination based on the representations that our expert, Dr. Chansky, will get another opportunity to go meet with the prison. That's the deal. That's the first reason. But that's such an odd deal to characterize as a settlement. All they have to do, I mean, there's a motion to terminate based on a statute, the PLRA, and all that needs to happen in order for the plaintiffs to decide to withdraw and to enter the, or to agree to withdraw is that there will be a meeting. That's right. Not that anyone will do anything or that if something comes out of that meeting someone will follow up. There's nothing about it that suggests an obligation on the part of the defendants to do anything other than show up for an hour. We certainly readily agree it was a meager settlement, right, and the reasons why are reflected in that letter from class counsel to members of the class. They were concerned about their ability to prevail, and they may have believed, rightly or wrongly, that this was the best they could do in terms of a settlement. But the flip side of this settlement is that it allowed the court to terminate the consent decree without any adjudication of the merits of the dispute. If you look at Special Appendix 1, the court says simply, accordingly. There had already been a certificate of compliance, right? I mean, there had been years of auditing, and the expert who had been appointed had found that the prison was now in compliance with all the terms of the consent decree that had been set up for the prison. You're correct that the most recent report by the medical auditor did show that, but under this court's en banc decision in Benjamin v. Jacobson, the court said that before a termination is ordered under Section 3626 of the PLRA, the plaintiff class must have an opportunity to develop a record, and they had started down that road. In fact, just in January, I think it was January 26th, which is page 286 of the joint appendix, the court had set out a discovery schedule for the parties to engage in so that the plaintiff class counsel could discover what the facts were to make that showing. That process never finished because class counsel engaged in the settlement instead, and as a result, just to finish the thought, the court did not adjudicate. Oh, sorry, Your Honor. Mr. Feldman, didn't they apprise all members of these proceedings? No. So significantly what the class members never knew and never had a chance to know is that this settlement was presented to the court on March 2nd, so ordered on March 4th. There was no notice of the terms. This is not contested. There was no notice of those terms to the class members. There was no opportunity for them to make the objection that they weren't getting much for giving up on termination. Aren't they bound, however, by their lawyer's letter with agreeing to the termination? No, they aren't, Your Honor. And the State concedes that if this is a settlement under Rule 23e and the Due Process Clause, that the termination of a consent decree is a process that's entitled to full due process protection under Rule 23. They should have had a hearing, an opportunity to object. They didn't have notice, most of them. They had no notice. That's exactly right. And the State, until submitting their red brief in this appeal, conceded that this was a settlement. We cite the various, I think, five times they said so below and to this court on page 4 of our reply brief. In Docket 109 to the Second Circuit, in opposing the motion of the interveners to intervene, the State said on page 1 of their opposition that this termination was on consent of all the parties. On page 2, excuse me, page 6, that the plaintiffs had agreed to settle. And on page 18, that they had negotiated this termination. Could you address the standing question? I think that was part of your remit. And also, much is made out of the notion of absent class members. But I assume that for years, the named class members as representatives had been absent. And yet, I assume that happens relatively frequently in long-standing consent decrees that are difficult to manage, perhaps, and particularly in the prison context when people get released. But what is your possession about Mr. Irvin and the interveners and their standing to participate even here? Right. Let me take both of those questions quickly. First, on the adequate representation, there's no question as to what happened below, that there was no participation by the original class members or any named class representatives. There's consensus that that did not happen. But were they all gone by now? They were all gone, and the State says so in page 42 of their brief. The question is whether there needs to be representation by a named representative at all times. The Supreme Court has answered that question directly. Justice Rehnquist said, of course, they must be there at all times. Only if we consider this a settlement? Even if it's not a settlement. In the termination phase, the most important phase of this litigation since the beginning, adequate representation was required. The Supreme Court, in shutset, it is required at all times. Shouldn't there be an amendment to the complaint or some other way to have a named representative? Yes, Your Honor. What should happen upon remand is the court should appoint new class representatives to represent the class. Judge Friendly said in footnote 6 of the super spuds case, that it doesn't matter how great your class counsel is, no matter how capable, there's nothing in the rule to suggest that the zeal or talent of the representative plaintiff's attorney can supply the omission of the missing class representative. As to standing, every circuit that's looked at a similar, my time's expired. You can finish your thought. Yes. Every circuit that's looked at a similar scenario, where absent class members' due process rights were violated without notice, has held, and we list these at page 25 of our reply brief, that they have standing under rule 60B4 to bring this same type of proceeding. And your argument is that this settlement was void ab initio because of the lack of due process. That's precisely it, Your Honor. Thank you. Thank you. We'll hear from the city. State. Forgive me. Good morning. May it please the court. Mark Grube for the state appellees. Appellant's request for post-judgment relief fails for a threshold reason. Rule 60B does not provide relief to absent class members who did not participate in the underlying litigation. Appellants never participated in district court proceedings despite receiving notice. Let me interrupt for just a second. I've had a little difficulty with this because of the length of the duration of the time in which the consent decree was in place. Does the state consider that upon the release of all the individuals who are named plaintiffs, that it could have just proceeded to ignore the consent decree? No. The state complied with the consent decree as reflected by- But there were no more named plaintiffs, right? There were just people like Mr. Irvin who were covered by the decree and were supposed to be represented by the decree and by class counsel. What did he need to do in order to become not absent? Did he need to move to intervene or participate in some way? He didn't really have an opportunity to object here later. Right. Well, if you look through the first 50 pages of the appendix which show the history of this litigation since 1979, you'll see that it largely reflects pro se filings for motions to intervene, motions for contempt for noncompliance. If he just moved at any point to intervene or to call to the court's attention some episode of noncompliance, that would have given him standing here? It would have given him- It depends on the circumstance. He would have a better argument, but the fact that he did nothing means that he doesn't fall in line with the cases that have allowed 60B relief to non-name. Rule 60B-4 on which the petitioners are now relying, that it was void for lack of due process. Well, the language party or legal representative is in the umbrella language of Rule 60B, so it applies to all of the various subsections. For lack of a better word, standing is not any different under Rule 60B-4 than it would be under any other subsection. It's not as if appellants are without any relief for any complaints they have about medical care at Greenhaven. They can file a new lawsuit. They could even request that the court implement the Milburn consent decree as relief in their new lawsuit, but what they can't do is reopen this decades-old litigation that has now been closed for several years. Mr. Feldman, the blue brief describes or says that you described this termination repeatedly as a settlement. Yeah, let me address that. In our briefing below and before this court, describing the procedural history of what happened and before the Rule 60B-4 argument had been raised for the first time, we used that phrase to describe that this was a litigation that was fought vigorously at arm's length for decades with class counsel very vigorously representing the interests of detainees. And so it was to emphasize the point in a colloquial sense that even when class counsel had conducted all this discovery, had no basis to oppose termination, they got us to agree to meet and consider additional reforms. But what they didn't get is there's no settlement written agreement executed by both parties. There's no release of claims that would typically happen in a settlement agreement, so the class members are not bound by any release in a settlement agreement. So that's why we used the phrase in a colloquial sense but not in the sense of what one traditionally thinks a Rule 23E class action settlement, which would generally delineate the scope of claims, the scope of the class members, and what the court did, there are three documents that reflect what the court did, the memo endorsed order, the judgment, and the ruling on Irvin's Rule 60B motion. And in all three of those documents, the court references that plaintiffs withdrew their opposition and the court granted the termination motion, and it does not say anything about a settlement or approving a settlement that's binding on the class members. If I can just talk a little bit about also how the Prison Litigation Reform Act fits into this, and that goes to the point about the settlement is that it's sort of an unusual posture, an unusual motion, because once the state files its motion, after 30 days... Let me go back a little bit. Do you agree that if we were to characterize this as a, or view this as a settlement, or if Judge Preska had viewed it as a settlement, the appropriate course would have been to have some form of fairness hearing? That's correct. If it's a rule, if it's a settlement in the sense of binding class members, then Rule 23E would dictate that the court should consider the fairness factors before implementing the settlement. But that didn't happen. Just hypothetically, if that had happened, you would agree that that would have been an error not to conduct the hearing? That's correct. I mean, just to be clear, we do dispute the points about notice and adequacy of representation. All of that was complied with for the reasons we've described, but there's no dispute. It's in the docket. There was not a fairness hearing or a ruling on the Grinnell factors. But the court also doesn't need to reach that issue because of the threshold standing issue under Rule 60B, which also... Why can't we treat Mr. Irvin as a non-party who was affected by the termination, extraordinarily affected? Well, so this court has done that twice in the Grace case and the Dunlop case. Correct. Both cases emphasize the sort of extremely limited scenarios. In none of those cases, the main factors that we've talked about, about notice and opportunity to be heard, here the appellants were well aware of the termination proceeding that was going on. But here the appellants were not? No. Allegedly, that's their claim, that they were not notified of the termination, settlement, whatever? Well, they acknowledge in their reply brief that they received a letter shortly after the termination motion was filed. And then it was terminated. Well, there's two letters. There's one when the termination motion was filed before, so about seven months before the court ordered the termination. So they received that letter, which informed them that class counsel did not intend to oppose termination for almost all of the judgment with respect to two limited provisions. They didn't have any basis to do so, but they would conduct discovery. For fear of an adverse ruling by the court. Right. Whatever that referred to. Well, if they had contested the termination motion, then the court, rather than the order that it entered, would have entered an order with findings of fact and conclusions of law. And if it had found that certain practices were not systemic Eighth Amendment constitutional violations, then that would have bound the entire class in future litigation if they sought to bring a pro se 1983 suit. Indeed, if that were true. Right. Why doesn't Mr. Irvin get the benefit of the Dunlop and Grace Holdings and be treated as a representative? Because he was, he had an opportunity, unlike in Grace and Dunlop, he had an opportunity to have his say during the seven months that the termination motion was pending. And because he has a more limited, in Grace and Dunlop, the court also emphasized the limited scope of relief sought. The one involving Pan Am, the court just sought to modify the judgment to be clear that it was only saying what it legally could say in the first place. Here, Irvin seeks to upset a judgment that's being relied on by a large number of parties. But part of what he's saying, though, is that some of the specific elements of the consent decree that protected the health and kind of access to medical care of the physically disabled were disassembled after the consent decree was terminated, kind of immediately after. And so the protections they had in place, access to nurses and emergency buttons and the unit itself, were taken apart. And I take it that the state hasn't been in a position to have to agree or refute those factual allegations. But it's troubling to me to see those allegations in this context. As soon as the termination order is entered, the state ceases its efforts, allegedly, to comply with these protections for disabled prisoners. Well, I'll say a couple things. First, in the merits brief on appeals, the underlying substance of their complaints was not discussed, and so the state did not respond and address that. In the district court below, the district court considered the arguments and concluded that the arguments amounted more to changes in location as to where medical care was provided and that those were not extraordinary circumstances under Rule 60B-6. But that argument wasn't directly raised here on appeal. Obviously, if they filed a lawsuit challenging those changes as Eighth Amendment violations, then the state would address it in the context of that lawsuit as well. So they would be able, in the context of a new lawsuit, to point to the consent decree as standards that were put in place to implement their Eighth Amendment claims on the first go-round. Right, right. But they would sort of be in the same position where they would have to demonstrate an Eighth Amendment violation, pretty much in a similar posture. I see that my time is up. Thank you. We'll hear from Mr. Feldman, who deserves some time for rebuttal. Thank you, Your Honors. First, a factual correction. The inmates did not learn at any point in time before March 2nd that the class counsel was not going to oppose. About the seven-month period that Mr. Groob just told us about. If you look at the record, Joint Appendix 342 to 345, what they find out, and this is before the court grants the request for discovery, which happens the following January, right? They haven't started yet. They haven't had the opportunity to build the record. We're back in August, and in August, class counsel says in the letter that no final decision, this is on page 344, has been made. Excuse me, Your Honor? This is the Legal Aid Society letter. A letter from the Legal Aid Society class counsel. That's correct. And they will make an informed decision after all the facts are in, which have not even happened yet because the discovery order comes the following January. So they did not have notice at any point in time that class counsel had made a decision to withdraw their opposition. That's why you think that Mr. Irvin should get the benefit of the dunlop in Grace Holdings because he was affected by this and had no notice. That's right. This case is easier than Grace. In Grace, they were truly non-parties. The Supreme Court in Devlin has said, has rejected the formalistic approach to party for class members that the state proffers and said whether a non-named class member is a party or not will depend on context. That's what Justice Ginsburg says in the Devlin decision. Here, they're affected as parties, and they should be parties under the rule, and that's how other circuits have treated this. In your Honor's decision in Grace v. Bankleumi, the court notes a concern with due process violations, quote, unquote, upon, quote, absent parties. Well, that's exactly what happened here. It's right on point with the circumstances here. Could you clarify one thing for me, please? I understood, because there was a timing challenge also, I understood that Mr. Irvin, he was complaining that the state waited until after the year had run to start to disassemble the unit. So these things couldn't have been pled at the time, even had he had adequate notice. Is that correct? That's correct, and that's in the record as well. Yes, Your Honor. If I may make one more point, the state overstates the Rule 23 in due process rule on what is a settlement. The line is between what Rule 23 calls a settlement, a compromise, or a voluntary dismissal. That's what happened. The other side of the line is an adjudication on the merits, right, or an involuntary dismissal. That is what did not happen here. The court did not make findings of fact and did not come to any conclusions of law. And for that reason, Your Honor. And the enactment of the PLRA didn't affect how the court is bound to act under Rule 23 in your view? No. It may have made it easier for the court to have made one finding and then reached a conclusion of law, but it didn't happen below. But have we required findings of fact or conclusions of law in connection with determining whether a resolution counts as an adjudication on the merits? Has this court required conclusions? I don't know, Your Honor. I'd be happy to put in supplemental briefing on the point if it would be helpful. Let me ask you another question. If we were to disagree with you and determine based on this record that this was not a settlement but rather an adjudication on the merits, could your clients prevail? Yes, we could. Because under Schutz and in-ray payment card interchange, this court's opinion, class representatives were required at all times. Settlement or not, this was a critical phase of this class action, the termination phase. And there was no class representative overseeing class counsel. Let me just make a practical point here. If the class counsel had gone to any member who was incarcerated and pointed as a class representative and said, we intend to withdraw, I strongly suspect they would have disagreed with class counsel. Because they still felt the medical care was inadequate. And it would have been raised to the district court who has a fiduciary duty to make sure the class representative is looking out for the best interest of all the class members. That's what would have happened if a class representative had been in place during the termination phase. Settlement or not, the critical decision to not oppose is a decision that would have been overseen by a class representative. And as Judge Friendly said, again- It was not to a class representative. It was to class members. Justice Rehnquist goes on for about two pages in Schutz about how class members themselves, if they're not named, have every right to sit back and rely on the protections provided by Rule 23A that the court and the named class representatives will look out for their interests. They have no obligation to do anything until they're invited forward to the court to object to a settlement or to opt out in the case involving an opt-out, right? So the proper procedure for the Legal Aid Society should have been, in your view, to find another person willing to be a class representative. Ultimately, the proper procedure, yes, for the court would have been to require a class representative to be in place. Well, that would have been presumably through the Legal Aid Society, right? Yeah, well, we're respectful of all the hard work the Legal Aid Society has done. And to give due process to the consideration of the settlement or termination. Precisely. But to your point, either of those are sufficient and independent grounds for a due process violation. And both of them give rise to standing, party standing, under Rule 60b-4. Thank you. Thank you, Your Honors. Thank you both. Very good argument. We'll reserve decision. That concludes our calendar today, so I'll ask the clerk to adjourn court. Court is adjourned.